# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ROY DAVID KINARD,
        Petitioner,

v.                               CASE NO. 8:17-cv-1252-T-02SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,
        Respondent.

_____/

## ORDER

On May 26, 2017, Petitioner Roy Kinard filed his petition under 28 U.S.C. § 2554 for a writ of habeas corpus by a person in state custody. Dkt. 1. He seeks relief from a June 22, 2011, Florida state court conviction. *Id.* Respondent filed a response in opposition. Dkt. 10. Kinard filed two replies. Dkts. 11 & 14. The Court finds that a hearing is unnecessary and denies the petition.

## Background

On June 22, 2011, a jury sitting in Pasco County found Kinard guilty of aggravated battery, two counts of aggravated assault, two counts of kidnapping, false imprisonment, felonious possession of a firearm, and armed burglary. Dkt. 13-1 at 316. He was sentenced to concurrent life sentences. Dkt. 13-1 at 322 & 326. Kinard directly appealed his conviction to the state appellate court. Dkt. 13-2.

The state appellate court affirmed his conviction and the mandate was issued on February 26, 2013. Dkt. 13-4 & 13-5.

On May 16, 2013 Kinard filed a state petition for writ of habeas corpus. Dkt. 13-5. While that petition was pending in the state appellate court, Kinard filed a Motion for Postconviction Relief under Florida Rules of Criminal Procedure Rule 3.850. Dkt. 13-10 at 1–59. On December 13, 2013, Kinard's state habeas petition was denied. Dkt. 13-9. After that, the state postconviction court held a hearing on Kinard's Rule 3.850 motion and then denied the motion. Dkts. 13-10 at 1149–1248; 13-10 at 387–413. Kinard appealed and the appeal was denied by the state appellate court. Dkts. 13-11 & -14. Kinard sought review by the Florida Supreme Court of this denial but, in a March 3, 2017 order, the Florida Supreme Court found it lacked jurisdiction to take the appeal. Dkt. 13-19.

While the postconviction court's decision was being appealed, Kinard also filed a "Second or Successive Motion for Post-Conviction Relief" with the state postconviction court on January 19, 2016. Dkt. 13-20 at 1–10. The state postconviction court found that it lacked jurisdiction over the motion because of the pending appeal of the first postconviction motion. Dkt. 13-20 at 11–15. Kinard appealed this decision and the appeal was denied by the state appellate court. Dkts. 13-21 & -23. Kinard filed this Petition for Writ of Habeas Corpus on May 26, 2017. Dkt. 1.

**Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this petition. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998). AEDPA "establishes a highly deferential standard for reviewing state court

judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir.

2003). This type of review does not allow relief of a state court conviction on a

claim

> that was adjudicated on the merits in the State court proceedings unless
> the state court's decision was '(1) . . . contrary to, or involved an
> unreasonable application of, clearly established Federal law as
> determined by the Supreme Court of the United States; or (2) . . . based
> on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.'

*Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016)

(quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme

Court "as of the time of the relevant state-court decision." *Id.* at 1288–89.

"Contrary to" requires a state court conclusion "opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides a case differently

than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at

1289 (citations omitted) (alterations in original). The "unreasonable application"

clause applies only "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

That said, a state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). AEDPA "requires federal habeas courts to presume the correctness of state court's factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* (citation omitted). This is a "demanding but not insatiable standard, requiring proof that a claim is highly probable." *Id.* (citation and internal quotation marks omitted). Further, this standard applies even if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002).

## Discussion

A. <u>Timeliness and Exhaustion</u>

Federal habeas petitions are subject to a one-year statute of limitation. 28 U.S.C. § 2244(d)(1) (2018). It begins running—as relevant here—on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* at 2244(d)(1)(A). The clock

stops running for the "time during which a properly filed application for State post-conviction . . . judgment or claim is pending[.]" *Id.* § 2244(d)(2).

Kinard's conviction became final for federal habeas purposes on February 26, 2013. Dkt. 13-5. Around three months later, Kinard filed a state petition for writ of habeas corpus. Dkt. 13-6. A month later Kinard filed a Rule 3.850 motion for postconviction relief. Dkt. 13-10 at 1–59. Then in January 2016, Kinard filed a second Rule 3.850 motion. Dkt. 13-20 at 11–15. All three of these were denied, appealed, and then denied on appeal, with the last order being issued on March 3, 2017. Dkt. 13-19. Around two months later, Kinard filed his federal habeas petition on May 26, 2017. Dkt. 1. So, as both parties agree, Kinard's Petition is timely.

Each of Kinard's grounds for relief presented in the Petition are exhausted for purposes of federal habeas review. They all were presented during state postconviction review, denied, and then denied on appeal. *See* Dkts. 13-6, -10, & -15.

B. Merits

Kinard raises four grounds for relief with Ground Four containing nine separate "sub-claims." Respondent argues that each of these grounds are meritless and should be denied. The Court agrees.

1. *Williams* Rule Hearing

In Ground One of his Petition, Kinard argues that the state trial court erred in permitting the jury to hear *Williams* Rule evidence.[1] Kinard argues that the trial court's evidentiary decision to allow discussion of a 2005 incident between Kinard and Melony Malone—his ex-wife and one of the victims of the 2009 crimes—was erroneous and caused him prejudice. This Ground is not appropriate for federal habeas review.

A challenge to the admission of evidence under state evidentiary rules is a matter of state law that provides no basis for federal habeas corpus relief because the ground does not present a federal constitutional question. 28 U.S.C. § 2254(a); *See also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."). A *Williams* Rule determination is plainly an evidentiary decision. *See Williams*, 110 So. 2d at 663 ("[E]vidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible . . . ."). Consequently, Kinard's claim based on the admissibility of *Williams* Rule evidence under Florida's evidentiary rules is not a cognizable claim

---

[1] *Williams v. State*, 110 So. 2d 654, 663 (Fla. 1959) (allowing for the admission of evidence of other crimes, wrongs, and acts, if it is relevant to and probative of a material issue, even if the evidence may reflect adversely upon the accused's character); *see also* Fla. Stat. § 90.404 (state evidentiary code rule codifying same).

for relief. *See, e.g.*, *Twardokus v. Sec'y*, DOC, No. 2:11-CV-594-FTM-38CM, 2015 WL 926035, at *7–8 (M.D. Fla. Mar. 4, 2015) (denying a similar *Williams* Rule federal habeas challenge).

2. Ineffective Assistance of Appellate Counsel

In Ground Two, Kinard raises two claims of ineffective assistance of appellate counsel. The standard for ineffective assistance of appellate counsel is the same standard as applied to trial counsel. *Brooks v. Comm'r, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013). Counsel is ineffective if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The Court will address each of Kinard's ineffective assistance of appellate counsel claims in turn.

a. *Williams* Rule

The first ineffective assistance of appellate counsel claim that Kinard raises involves the *Williams* Rule hearing. Kinard argues that his state appellate counsel was ineffective for failing to challenge, on direct appeal of his conviction, the allegedly deficient *Williams* Rule notice. This Ground is based on a comment by the state trial judge during the *Williams* Rule hearing. During the hearing the state judge looked at the required *Williams* Rule notice and remarked to Kinard's trial

counsel that "[t]his is not a *Williams* Rule notice. . . . [Kinard's trial counsel], you're not on notice of anything at this moment." Dkt. 13-1 at 28. Kinard argues that his appellate counsel was ineffective for failing to pursue this allegedly deficient notice on his direct appeal.

Yet Kinard's appellate counsel was not deficient. Appellate counsel can winnow out weaker arguments from an appellate brief and, in fact, this is usually better lawyering. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Here, appellate counsel wisely chose not to raise this claim on appeal.

The comment made by the state judge during the *Williams* Rule hearing was seemingly about a third incident. The *Williams* Rule hearing was about whether the prosecution would be permitted to introduce evidence about a 2005 incident between Kinard and Melony Malone with similar circumstance as the charged offenses. After the evidence about the 2005 incident was discussed at the hearing, the prosecution tried to discuss a third incident from 2010. Dkt. 13-10 at 24–28. At that point, Kinard's trial counsel objected and noted that he was not on notice about this third incident. *Id.* The judge then reviewed the *Williams* Rule notice and noted that Kinard's counsel was "not on notice." *Id.* The judge then allowed the hearing to continue but did not allow evidence or argument about the 2010 incident. *Id.*

Kinard's trial counsel was on sufficient notice about the incidents discussed at the *Williams* Rule hearing, adequately cross-examined the witness at the hearing, and argued the merits of the *Williams* Rule evidence. Kinard's appellate counsel's decision forgo arguing that Kinard's counsel was not on notice was reasonable. Thus, this claim is meritless.

    b.  Crime Scene Photographs

Kinard's other claim is that counsel for his direct appeal failed to argue that the admission of certain crime scene photos was inappropriate. At Kinard's trial the prosecution introduced photographs of Melony Malone's house that showed damage caused by the police while arresting Kinard, days after the charged conduct. Kinard argues that it was erroneous for the prosecution to admit these photographs, for the trial court to allow them to be introduced, and for his appellate counsel not to argue these points on direct appeal of Kinard's conviction.

Yet, even if this decision were deficient—something this Court is unconvinced of—it surely was not prejudicial. As noted below, the prosecution did not use these photographs to show anything but the layout of the house. There was no evidence or testimony that Kinard ransacked the house and none of his charges had elements even tangentially related to destroying the house. Whether these photographs were admitted did not affect Kinard's conviction.

Again, appellate counsel is permitted, if not required, to narrow the potential pool of arguments on appeal. *Jones*, 463 U.S. at 751–52. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* Kinard's appellate counsel chose to focus on other, more cognizable, issues. Kinard is not entitled to relief on this claim.

3. *Giglio* Violation

In Ground Three, Kinard argues that the prosecution "present[ed] false testimony through witness Tanisha Henshaw" in violation of *Giglio v. United States*, 405 U.S. 150, 153 (1972). Dkt. 1 at 13. Kinard asserts that the prosecution knowingly presented Ms. Henshaw's false testimony— using photographs that she identified during her testimony—about the how the crime scene looked at the time of the crime. Respondent argues this claim is meritless. The Court agrees.

To prevail on a *Giglio* claim, Kinard must establish: "(1) that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and (2) that the falsehood was material." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 949 (11th Cir. 2016) (emphasis added). "A falsehood is material if there is 'any reasonable likelihood' that it could have affected the result." *Id.* at 949 (quoting *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1278 (11th Cir. 2005)). In the context of habeas review, "the proper inquiry . . . is

whether the [state court's] treatment of [the petitioner's] *Giglio* claim was contrary

to or an unreasonable application of the 'any reasonable likelihood' standard." *Id.*

(quoting *Ventura*, 419 F.3d at 1279).

Following a motion for postconviction relief, the state postconviction court

denied this claim, stating in pertinent part:

> In this case, the prosecutor did not purposefully present false
> testimony. He asked whether the photographs fairly and accurately
> showed the home as it had been on the day of the offense. The witness
> stated that it was. The witness did not qualify her statement as she
> possibly should have done to add that the mess had not been there at
> the time of the offense. When the witness did not qualify her answer,
> after an objection and bench conference, the prosecutor corrected the
> false testimony by asking the question again in a way that would elicit
> a more accurate answer. Exhibit A: Trial Transcript, pgs. 254-256. The
> prosecutor asked the witness if the layout of the home was fairly and
> accurately represented in the photograph. To which the witness
> indicated that it was. *Id.* The State has not committed a *Gigilo* violation
> if the false testimony, once elicited, is promptly corrected. The Court
> finds that the prosecutor attempted to correct the inaccurate testimony,
> thereby satisfying the requirements of *Giglio.*
>
> Additionally, even if the prosecutor's attempt to remedy the false
> testimony were considered insufficient, the error was harmless. During
> the course of the trial, neither side argue or implied that Defendant had
> ransacked the house, nor was any testimony elicited that would have
> indicated that Defendant was responsible for the home's disarray.
> Exhibit A: Trial Transcript, pg. 222-271,298-338. Further, the mess had
> no bearing on any of the elements of the crimes charged. The Court
> therefore finds that the error, if any, was harmless error and cannot
> Defendant to relief.

Dkt. 13-10 at 392–93. After a review of the record and the applicable law the Court

finds that Kinard is not entitled to relief based on this claim. The state court's

adjudication of this claim was not contrary to clearly established federal law, did

not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings.

As noted by the state postconviction court, the prosecutor had the witness clarify that the pictures were being used to show how the house was "laid out." Dkt. 13-1 at 256. This is factually correct. To show a *Giglio* violation there must be false testimony by a witness. *Raleigh*, 827 F.3d at 949. Here there was none.

And there was no testimony by anyone that Kinard ransacked the house during the attack on Melony Malone nor would that testimony have had any bearing on any of the crimes for which Kinard was charged and convicted. Paired with the clarification that the photographs were intended only to show how the house was "laid out," there is no "reasonable likelihood" that these photographs being shown affected Kinard's conviction. *Id.* Thus, Ground Three must be denied.

4. Ineffective Assistance of Counsel Claims

Ground Four involves nine sub-claims. Each of these claims is based on allegations of ineffective assistance of counsel. Counsel is constitutional ineffective if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill*, 488 F.3d at 1354 (citing *Strickland*, 466 U.S. at 687). But in the habeas context, "[t]he question is not whether a federal court believes the state court's

12

determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted). The Court will address each of the sub-claims in turn.

    a. Sub-Claim One

In Sub-Claim One, Kinard alleges that his trial attorney waived speedy trial rights without his permission. Kinard alleges that this decision led to his charged crimes being enhanced to offenses carrying the possibility of life sentences and the *Williams* Rule evidence being brought in at trial. Yet this issue does not present a claim where federal habeas relief can be granted.

Following a motion for postconviction relief, the state postconviction court denied this claim, stating in pertinent part:

> Defendant's allegation is facially insufficient. Defendant has not shown that, had counsel not waived speedy trial, the State could not have gone to trial by the end of the recapture period. Based upon the testimonies of the two victims alone, the State could have amended the information to enhance the charges and add additional charges at any time before the speedy trial time ran. Further, Defendant has not shown that, had their hand been forced, the State could not have gone to trial against Defendant with solely the two women's testimonies. Defendant has not alleged that the two women would have been unavailable to testify

before the recapture period ran. Arguably, it may have weakened the State's case had the State not been able to use the *Williams* Rule evidence, but a weaker case does not mean that no case could have been mounted at trial. Defendant, therefore, has failed to allege sufficient prejudice in the instant motion.

Moreover, even if his allegation was facially sufficient, it would still entitle him to no relief. "[A]n attorney may waive speedy trial without consulting the client and even against the client's wishes. Thus, if the right to speedy trial may be waived without consulting the defendant, counsels' waiver here cannot be considered an error, let alone one that is 'so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *McKenzie v. State*, 153 So. 3d 867, 875 (Fla. 2014) (internal citations omitted). If it is not erroneous for an attorney to waive speedy trial "even against the client's wishes," counsel's waiver in the instant case cannot be considered deficient performance; thus, counsel was not ineffective. Therefore, Defendant is not entitled to relief on this ground.

Dkt. 13 at 7–8.

After a review of the record and the applicable law the Court finds that Kinard is not entitled to relief based on this claim. The state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. In any event, Kinard's counsel was not ineffective.

Putting aside the Florida Supreme Court's holding in *McKenzie v. State* that an attorney may "waive speedy trial without consulting the client," Kinard's decision to waive speedy trial seemingly was in line with the state rules of criminal procedure. 153 So. 3d at 875. A demand for speedy trial by the defense lets the

state know that defense "has diligently investigated the case, and is or will be prepared for trial within five days[.]" Fla. R. Crim. P. 3.191(g). Kinard acknowledged that his counsel did not have the state discovery materials when Kinard wanted to invoke his speedy trial rights. Dkt. 1 at 19. His counsel could not possibly have "diligently investigated the case" without the state discovery materials. For these reasons, Sub-Claim One must be denied

      b. Sub-Claim Two

In Sub-Claim Two, Kinard argues that his trial counsel was deficient for allegedly advising him to not testify at trial. Kinard alleges that his trial counsel advised him that if he testified the jury would learn of the nature of his prior convictions. Dkt. 1 at 21. This claim is also denied.

Following a motion for postconviction relief, the state postconviction court denied this claim, stating in pertinent part that:

> At the evidentiary hearing, Defendant testified that it was his belief that if the jury had heard his side of the story, presumably as outlined in his motion, the outcome of his trial would have been different. Exhibit B: Evidentiary Hearing Transcript, Pg. 14. Counsel for Defendant also testified at the evidentiary hearing and said that it was Defendant's ultimate decision whether or not to testify, but that if Defendant testified, the jury would be made aware of how many convictions Defendant had. Exhibit B: Pg. 62, Ln. 3–9. Counsel was adamant that at not time did he mistakenly or accidently advise Defendant that the exact nature of Defendant's prior crimes would be made known to the jury if he testified. . . . The Court finds counsel's testimony on this issue credible and the Defendant's testimony not credible.

Dkt. 13-10 at 397–98. This too is a reasonable application of federal law and is based on a reasonable determination of the facts in the state court proceedings. That said, Kinard's counsel was also not ineffective.

Ineffective assistance of counsel claims require showing both deficiency and prejudice to the defendant because of the deficiency. *Strickland*, 466 U.S. at 668. Kinard alleges that his counsel informed him that if he took the stand then the prosecution could ask him about the nature of his prior convictions. Even accepting this allegation as true—something the state court did not—Kinard has failed to show that his decision to not take the stand prejudiced him.

Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner is unable to show with reasonable probability that if he had testified the results of the proceeding would have been different. In his Petition, Kinard states that he would have "testified that the alleged victim stabbed him in the chest trying to kill him while he was asleep and [he] defended himself," something itself not inconsistent with facts actually presented at trial that Melony Malone attempted to stab Kinard in order to escape from his attack. Dkt. 1 at 20. Moreover, an effective cross-examination by the prosecution could have used this to inquire further about Kinard's abusive relationship with the victim—something unlikely to bolster Kinard's credibility with the jury. Because he has not shown

prejudice, he has not established an ineffective assistance of counsel claim and Sub-Claim Two must also be denied. *See Strickland*, 466 U.S. at 697,

   c.  Sub-Claim Three

In Sub-Claim Three, Kinard argues that his counsel was ineffective for allegedly failing to communicate the state's plea offer to him. Kinard alleges that his counsel received an offer by the prosecution for a fifteen-year plea agreement but never told Kinard about the offer. This sub-claim must also be denied.

Following a motion for postconviction relief, the state postconviction court denied this claim, stating in pertinent part that:

> At the evidentiary hearing, counsel for Defendant testified that he had relayed the State's offer of 15 years' [sic] but that Defendant rejected same. Exhibit B: 52–54; 63–64. Counsel advised that Defendant was trying to get an offer of 5 years' [sic] from the State, but was really hoping for probation. Exhibit B: Pg. 54. Towards the end of the evidentiary hearing counsel's testimony seemed to suggest a reason for the Defendant's rejection of the 15 year offer. On redirect, the State asked counsel if "defendant believed that the victim would show up for trial," to which counsel responded "No." Exhibit B: Pg. 77, Ln. 19–21. . . . Defendant's belief that the victim would not show up to testify at trial supports counsel's testimony that despite facing up to 60 years' [sic] incarceration under the initial Information, the Defendant would reject a 15 year offer. . . . Given the specificity with which counsel recalls the plea discussion in this case the Court finds counsel's testimony to be highly credible. . . . Thus, Defendant is not entitled to relief on this ground.

Dkt. 13-10 at 399. Again, this is a reasonable application of federal law and is based on a reasonable determination of the facts presented in the state court proceedings.

"Reasonable minds reviewing the record might disagree about the [witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). So long as the state court's credibility determination was not "unreasonable . . . in light of the evidence," this Court must accept the state court's determination. 28 U.S.C. 2254(d). Given Kinard's focus on Melony Malone's recantation letter, the state postconviction court believing that Kinard bet on the state's case falling apart because of resistance by the key witness was reasonable. So this Court must credit Kinard's counsel's testimony about the plea offer and find Kinard's ineffective assistance claim in Sub-Claim Three meritless.

d. Sub-Claim Four

In Sub-Claim Four, Kinard argues his trial counsel was ineffective for failing to impeach a witness with a prior inconsistent statement. Kinard alleges that Melony Malone testified inconsistently at trial. Kinard argues that his trial counsel was ineffective by not impeaching her on those alleged inconsistencies.

However, the state postconviction court found that:

> [a]t the evidentiary hearing, counsel testified that his reasons for not impeaching Ms. Malone on those topics raised in Defendant's motion were strategic. Specifically, counsel testified that he does not impeach a witness on every inconsistency, but rather tries to impeach on "factual mistakes, factual discrepancies, things that make it look like they're lying, not something like little details like they said they were wearing a red shirt but they were really wearing a blue shirt, or they were wearing Nike sneakers but they had Adidas sneakers, things like that.

> Little details like that aren't relevant to whether the crime actually happened." Exhibit B: Pg. 55-56. The Court agrees with counsel's trial strategy in that attempting to point out every little inconsistency in a witness' testimony, especially the victim's testimony, counsel is not focusing on those facts that are relevant to whether or not the crime actually occurred. In fact, nitpicking at every inconsistency in a witness's testimony could result in the jury forming a negative opinion of counsel, which certainly would not have been to the Defendant's benefit.

Dkt. 13-10 at 402. This determination by the state court is a reasonable application of federal law and is based on a reasonable determination of the facts presented in the state court proceedings. And Kinard's counsel was not ineffective for the allegations in this Sub-Claim either.

"[I]t is a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding. . . . [I]t is rarer still for merit to be found in a claim that challenges a strategic decision of counsel." *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (internal citations omitted). A strategic decision by counsel is only subject to federal habeas review when it was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Here, Kinard's counsel made the sound strategic decision to avoid burning through credibility with the jury by objecting to relatively minor inconsistence in the testimony of one of the victims. This decision is not deficient, meaning that Sub-Claim Four must be denied.

e.  Sub-Claim Five

Kinard also argues that his trial counsel was ineffective for failing to call three witnesses—Nathan Carreras, Gary Eubanks, and Melinda Smiley—that would have testified to allegedly important facts at issue in the trial. Carreras allegedly would have testified that he dropped Kinard off at the victim's residence, watched Kinard use a key to unlock the door, and that Kinard did not appear to have a gun. Eubanks allegedly would have testified that he was Kinard's probation officer and that the address Kinard used for probation purposes was the address of the residence he was charged with burglarizing. Smiley allegedly would have testified that Melony Malone told her that her injuries stemmed from a robbery in a parking lot rather than from Kinard. However, this Sub-Claim must also be denied.

Kinard's trial counsel's decision to not call Carreras was not deficient. Kinard alleges that Carreras would have testified that he dropped Kinard off at the victim's house and did not see him pound on the door of the house. But, as the state postconviction court noted,

> Defendant does not allege that Mr. Carreras watched him enter the home and close the front door, or that he saw Defendant physically greet the inhabitants. Mr. Carreras could therefore not have testified to what happened once Defendant actually entered the home. Defendant alleges that Mr. Carreras's testimony as to what happened at the front door would have refuted the victim's testimony that Defendant pounded on the front door and entered with a drawn firearm. However, the fact that Mr. Carreras did not witness Defendant pound on the door or draw a firearm does not mean that the pounding did not occur or the firearm did not exist. The firearm could have been concealed until Mr. Carreras

20

was no longer within view of the residence. Defendant does not allege that Mr. Carreras could see both of Defendant's hands at the time that Defendant was entering the home; therefore, Mr. Carreras could not have testified for certain that Defendant was not displaying a firearm upon entering the home. The banging could similarly have been saved for the moment at which Mr. Carreras was out of earshot of the Defendant. Additionally, even if the banging had not occurred, it would not have changed the outcome of the case because the violent banging on the front door was not an element of any of the offenses. Mr. Carreras's testimony, therefore, would not necessarily have refuted the victim's testimony, and counsel was ineffective for failing to call Mr. Carreras to testify to the lack of banging or lack of firearm.

Dkt. 13-10 at 404–05. "While attorneys may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made." *Solomon v. Kemp*, 735 F.2d 395, 404 (11th Cir. 1984) The strategic decision not to call Kinard's friend to testify about matters outside the elements of the crimes Kinard was charged with, does not seem "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

As for Eubanks, Kinard's counsel's decision to not call him was not deficient. At the postconviction evidentiary hearing Kinard's trial counsel recalled that he "had [his] investigator go out [to interview Eubanks]. The testimony that was going to be elicited by the probation officer [Eubanks] was that the address that Mr. Kinard had given was the address that the victim lived in." Dkt. 13-10 at 699–700. When asked why he did not call Eubanks to testify to that effect at trial Kinard's counsel replied that while "[Kinard] felt that it was pertinent[,] there was

no verification that he actually lived there . . . outside of a hearsay statement." *Id.* at 700. This decision was not deficient.

First, the state postconviction court determined that Kinard's counsel's belief that any statement by Eubanks about what Kinard told him would be hearsay was correct. Dkt. 13-10 at 406. This Court must defer to this determination. *Land v. Sec'y, Dep't of Corr.*, No. 8:04-CV-2524-T-27TGW, 2008 WL 816707, at *10 (M.D. Fla. Mar. 26, 2008) ("The Court must accord great deference to a state court evidentiary ruling and should rarely grant habeas relief on the basis of such a ruling.") (citing *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986)). Second, while in his Petition Kinard alleges that Eubanks made probation visits for Kinard to the victim's address, this too is not enough to find deficient performance by trial counsel. Kinard's trial counsel states that he sent an investigator to interview Eubanks and that the only "testimony that was going to be elicited by [Eubanks] was that the address that Mr. Kinard had given was the address that the victim lived in." Dkt. 13-10 at 699–700. The decision not to call a witness that, after diligent investigation, had nothing admissible to offer is reasonable strategic decision. *Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"). Even assuming Eubanks could have testified that he made probation visits for Kinard at the victim's address and therefore knew he resided

there, Kinard's counsel did not discover this despite having an investigator

interview Eubanks. In sum, Kinard's trial counsel was not deficient for not calling

Eubanks.

Finally, Kinard's counsel's decision to not call Smiley was not deficient.

Again, "which witnesses, if any, to call, and when to call them, is the epitome of a

strategic decision[.]" *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en

banc). Smiley, a hairdresser, would have testified that Melony Malone, during her

hair appointment with Smiley, told Smiley that the bruises on her head were from

something other than the attack by Kinard. Trial counsel testified at the

postconviction hearing that he believed that Smiley's testimony would allow the

prosecution to, again, point out that Melony Malone was hiding the truth to protect

Kinard from prison time. Counsel wanted to avoid bringing more attention to this

point. This decision is not "outside the wide range of professionally competent

assistance." *Strickland*, 466 U.S. at 690. So, like the other two witnesses, the

decision not to call Smiley does not rise to ineffective assistance of counsel. For

these reasons, Sub-Claim Five is denied.

f.   Sub-Claim Six

In Sub-Claim Six, Kinard argues that his trial counsel's performance at the

*Williams* Rule hearing was ineffective. Kinard states that his trial counsel was

inadequately prepared for the *Williams* Rule hearing and rendered deficient

performance. Kinard alleges that his counsel failed to adequately impeach the state's witness, to argue the 2005 and 2009 crimes were dissimilar, and to argue the admission of the 2005 crime would be unduly prejudicial.

In the order denying Kinard's postconviction motion, the state court held:

> that this claim is without merit. It is clear from Judge Andrew's order that he fully considered the facts from the 2005 incident and compared them with the facts in the instant case, and made the determination that the 2005 incident was sufficiently similar to the facts in the instant case to be deemed admissible *Williams* rule evidence. Ex. D. Order on Defendant's objection to the State's Notice of Intent to Use *Williams* Rule Evidence. In fact, Judge Andrew's categorized the facts the 2009 charges as "striking similar to [Defendant's] action of just a few years earlier." Exhibit D: pg. 7.

Dkt. 13-10 at 412–13. This determination by the state court is a reasonable application of federal ineffective assistance of counsel law and is based on a reasonable determination of the facts presented in the state court proceedings. Moreover, Kinard's counsel was not ineffective for the allegations in this Sub-Claim.

This Court, on federal habeas review, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. Kinard's counsel diligently cross-examined Melony Malone and presented argument to the state court at the Williams hearing. While unsuccessful, this performance was not deficient.

That said, Kinard is also unable to show that any conduct by his trial attorney prejudiced him at the *Williams* hearing. Kinard argues that his counsel should have argued that the 2005 crime and 2009 crime were too dissimilar and too temporally distant to meet the *Williams* standard. Yet the state court analyzed these issues in its order and found that Kinard's "actions were strikingly similar to his actions of just a few years earlier [in 2005] for which he was incarcerated." Dkt. 13-10 at 837. Since Kinard's counsel was not ineffective in this regard, Sub-Claim Six must be denied.

### g. Sub-Claim Seven

In Sub-Claim Seven, Kinard argues that his trial counsel was ineffective for not asking for a cautionary instruction on the *Williams* Rule evidence. Kinard asserts that his trial counsel should have asked for a jury instruction directing the jury that any *Williams* Rule evidence—i.e., any testimony about the 2005 crime— should be used only for appropriate *Williams* Rule evidence purposes. Defendant claims that because this instruction was not given the jury "blurred [the 2005 and 2009 crimes] together and Petitioner was convicted of both the 2005 and 2009 incidents." Dkt. 1 at 31.

Yet, in the order denying Kinard's postconviction motion, the state court noted that "[a]t the evidentiary hearing counsel testified that it was a strategic decision on his part not to ask for the *Williams* Rule cautionary instruction because

he did not want to draw the jury's attention back to the events of 2005." Dkt. 13-10 at 414. Kinard has not "overcome the presumption that, under the circumstances," counsel not requesting the cautionary instruction "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted). So the state court's resolution of this claim was not objectively unreasonable.

And, as Respondent noted, the discussion about the 2005 crime was relatively brief, taking up only eight pages of the more than 700 pages of the trial transcript. Dkt. 13-1 at 342–49. There is no evidence that a cautionary instruction could have further mitigated whatever effect this brief testimony had on the jury; meaning that Kinard is unable to show the lack of instruction prejudiced him. Thus, Kinard is not entitled to relief on Sub-Claim Seven.

### h. Sub-Claim Eight

In Sub-Claim Eight, Kinard argues that his trial counsel was ineffective for not introducing a letter by Melony Malone that purports to recant all allegations against Kinard. Kinard claims that "[t]he trial court told defense counsel that he could not introduce the recantation letter during the state's case in chief, but it would be gross error not to introduce it during the defendant's case." [2] Dkt. 1 at 33.

---

[2] Kinard seeks to focus on the state trial court's statement that "it would be gross error on my part" not to admit the letter. Dkt. 13-1 at 380. But that statement came during discussion with the two sides, outside the presence of the jury, and before the letter had been discussed in front of the jury. The trial court's statement was about the court's decision to allow the letter to be used at all and not about the decision by Kinard's trial counsel about whether to introduce the entire letter into evidence.

Kinard argues that since his trial counsel did not introduce the letter, at trial, he was prejudiced by not being able to present an argue that Melony Malone fabricated her claims against Kinard.

As noted above, *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" 466 U.S. at 690–91. At the postconviction evidentiary hearing Kinard's trial counsel described how at trial he used the letter to impeach Melony Malone but eventually decided not to attempt to enter the entire letter into evidence because "the only way to introduce it was to recall [Melony Malone] as a witness and then have the State go back and . . . reiterate the fact that she [wrote the letter] to help [Kinard.]" Dkt. 13-10 at 1207. Kinard's counsel decided that, considering damaging extraneous facts in the letter,[3] it would be best for only parts of the letter to be admitted. This strategic decision is not "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. So Kinard's counsel's decision to not put Melony Malone's letter into evidence was not deficient under *Strickland*.

And, in any event, the state postconviction court noted:

that even if counsel was deficient in failing to admit Ms. Malone's letter into evidence, Defendant is unable to show a reasonable probability

---

[3] The Melony Malone recantation letter describes how Kinard "shot at the police" during the 2005 crime, how he was described as a "prime candidate to kill a cop," and about the 2010 manhunt for Kinard. Dkt. 13-10 at 840–47. None of these facts were brought out at trial.

that, but-for counsel's deficiency, Defendant would have been
acquitted of the charges against him. Ms. Malone was examined and
cross-examined at length regarding her authorship of the subject letter
and its contents. Exhibit A: pg. 352-469. During this part of the trial,
Ms. Malone testified that she wrote the subject letter at the Defendant's
request, and that many of the statements in the letter were false. She
further testified that she did not want the Defendant prosecuted, and had
written the letter in an attempt to avoid the case going to trial. Finally,
Ms. Malone testified that her testimony on the day of trial where she
indicated that the Defendant possessed a gun, struck her in the head
with that gun, and restrained her in her apartment were the actual events
that occurred in this case, not the narrative contained in the letter.
Additionally, during Ms. Malone's testimony, the State played two
recordings of jailhouse calls between the Defendant and Ms. Malone,
where he tells her that she needs to write the subject letter and what
information to include. (Exhibit A: pg 444-67).

Dkt. 13-10 at 415. This determination by the state court is a reasonable application

of federal ineffective assistance of counsel law and is based on a reasonable

determination of the facts presented in the state court proceedings. So Sub-Claim

Eight must be denied.

i. Sub-Claim Nine

In Kinard's final sub-claim he argues that the cumulative effect of all of the

eight other sub-claims amounts to ineffective assistance of counsel. Kinard asserts

that his trial counsel's "cumulative errors" amounted to performance "substantially

below that of competent counsel." Dkt. 1 at 35–36. Yet the Court has determined

that each of his eight ineffective assistance claims is meritless so there can be no

cumulative error. *See, e.g.*, *Morales v. Sec'y, Fla. Dep't Corr.*, 710 F. App'x 362,

365 (11th Cir. 2017) ("[W]e have rejected all of the claims of error before us. There are, therefore, no errors to cumulate."). Sub-Claim Nine must also be denied.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Kinard must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Kinard is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Kinard must obtain permission from the circuit court to appeal *in forma pauperis*.

**Conclusion**

The Court denies Kinard's Petition with prejudice. Dkt. 1. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on March 23, 2019.

/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO:**</u>
Counsel of Record
Petitioner, pro se